UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

NICHOLAS J. RANDALL and FAN FENG,

    Plaintiffs,

v.                               Case No:   6:17-cv-2103-Orl-31TBS

OFFPLAN MILLIONAIRE AG,
CAPINVEST LLC, JOACHIM OLIVER
NEDELA, STEPHEN JORDAN-QUAYLE,
CARL DHIR, CRESCENT REAL ESTATE
MANAGEMENT, INC., DANIEL J.
DORAN, JR. and LUCRETIA L. DORAN,

    Defendants.

## ORDER

Before the Court is Plaintiffs' Motion to Compel Jurisdictional Discovery From Defendant Joachim Oliver Nedela (Doc. 76) and Defendant Nedela's Response (Doc. 79). This follows a Joint Notice of Impasse Regarding Jurisdictional Discovery (Doc. 75). At issue is whether Nedela, a German citizen, resident in Switzerland, can be compelled to produce documents and sit for a deposition on the issue of whether this Court has personal jurisdiction over him. For the reasons set forth below, the Court finds that he can be compelled and therefore, the motion is **GRANTED in part**.

Background

Plaintiffs allege that Defendants violated the Federal Racketeer Influenced Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968, and the Florida Racketeer Influenced and Corrupt Organizations Act, FLA. STAT. §§ 895.01-895.06, by "collectively conspiring to participate in an enterprise for the common purpose of engaging in racketeering activity, specifically wire and mail fraud, concerning the conveyance and maintenance of real

property located in the United States, where the majority of the properties are located in, and enterprise conduct occurred in, Orange County, Florida (Doc. 17, ¶¶ 243-311). Six Defendants have been served, failed to respond, and have been defaulted. Plaintiffs have been unable to serve a seventh (See Docs. 26, 27, 31, 32, 48, 49 and 57). The remaining Defendant, Nedela, has made a limited appearance and filed a motion to dismiss for lack of personal jurisdiction and failure to state a claim upon which relief can be granted (Doc. 56). On September 12, 2018, Plaintiffs filed a consolidated preliminary response to the motion to dismiss which included a motion for leave to conduct discovery limited to the issue of personal jurisdiction, and to stay their response to the motion to dismiss until after the completion of that discovery (Doc. 64). The same day, Plaintiffs served on Nedela their First Set of Interrogatories Concerning Personal Jurisdiction and First Request for Production of Documents Concerning Personal Jurisdiction (Doc. 64-4). Plaintiffs also served a notice of taking Nedela's deposition without specifying the date or place while simultaneously requesting deposition dates and offering to take the deposition at any location and any time convenient to Nedela. He filed a response opposing the request to take jurisdictional discovery (Doc. 65).

On October 23, 2018, the Court granted Plaintiffs' motion to conduct discovery and stayed their response to Nedela's motion to dismiss for forty-five days "during which time [Plaintiffs] may engage in discovery that is limited to the jurisdictional issues raised by Nedela." (Doc. 66 at 11). The Court found that "Plaintiffs are entitled to obtain the limited jurisdictional discovery sought for the purpose of responding to Nedela's motion to dismiss." (Id.).

On November 13, 2018, Plaintiffs and Nedela jointly moved for an extension of the time to complete jurisdictional discovery and the deadline for Plaintiffs to respond to

Nedela's motion to dismiss (Doc. 67). The parties said Nedela had gathered more than 6,000 documents to review for responsiveness to Plaintiffs' discovery requests and that they were experiencing difficulty in clearing a mutually convenient day to hold Nedela's deposition (Doc. 75, citing Doc. 67 at 2). The Court granted the motion and extended Plaintiffs' deadline to respond to the motion to dismiss through January 10, 2018 (Doc. 69 at 1).

On November 27 and 30, 2018, Nedela informed the Court that he believes there are obstacles to conducting the jurisdictional discovery under Swiss law and he sought relief from the jurisdictional discovery deadlines (See Docs. 70, 70-1, 71, 71-1). On December 3, 2018, the Court denied without prejudice, Nedela's request for an additional extension of time noting: "[t]he Court does not know Swiss law or how it impacts jurisdictional discovery in this case." (Doc. 72 at 1). The Court added that it "does not now intend to strictly enforce the discovery deadline established in its Order," and instructed that "[w]hen the parties better understand the situation in Switzerland, including the sequence, timing, and results of actions there, they should update the Court which will, when it has more concrete information, entertain a motion to enlarge the time for jurisdictional discovery." (Id. at 1-2). Plaintiffs sought an additional brief extension of time (Doc. 73), which the Court granted (Doc. 74). On the date to complete jurisdictional discovery and file Plaintiffs' response to Nedela's motion to dismiss, the parties filed a Joint Notice of Impasse Regarding Jurisdictional Discovery (Doc. 75). The pending motion to compel and response followed.

Standards of Law

The scope of discovery is well known:

> Unless otherwise limited by court order, the scope of
> discovery is as follows: Parties may obtain discovery
> regarding any nonprivileged matter that is relevant to any
> party's claim or defense and proportional to the needs of the
> case, considering the importance of the issues at stake in the
> action, the amount in controversy, the parties' relative access
> to relevant information, the parties' resources, the importance
> of the discovery in resolving the issues, and whether the
> burden or expense of the proposed discovery outweighs its
> likely benefit. Information within this scope of discovery need
> not be admissible in evidence to be discoverable.

FED. R. CIV. P. 26(b)(1). The rules of civil procedure "strongly favor full discovery whenever possible." Farnsworth v. Procter & Gamble Co., 758 F.2d 1545, 1547 (11th Cir. 1985). That said, relevancy is key. "The discovery process is designed to fully inform the parties of the relevant facts involved in their case." U.S. v. Pepper's Steel & Alloys, Inc., 132 F.R.D. 695, 698 (S.D. Fla. 1990) (citing Hickman v. Taylor, 329 U.S. 495, 501 (1947)). "The overall purpose of discovery under the Federal Rules is to require the disclosure of all relevant information so that the ultimate resolution of disputed issues in any civil action may be based on a full and accurate understanding of the true facts, and therefore embody a fair and just result." Oliver v. City of Orlando, No. 6:06-cv-1671-Orl-31DAB, 2007 WL 3232227, at * 1 (M.D. Fla. Oct. 31, 2007) (citing United States v. Proctor & Gamble Co., 356 U.S. 677, 682 (1958)). If a party fails to respond to an interrogatory or request for production, or fails to attend his deposition, the party seeking the discovery may file a motion to compel such response or attendance. FED. R. CIV. P. 37(a)(3)(B)(i)-(iv), (d)(1)(A).

Analysis

In an August 10, 2018 sworn declaration accompanying his motion to dismiss, Nedela stated that he is a German citizen residing in Switzerland (Doc. 56-1, ¶3). He declares that he had nothing to do with the scheme alleged; he was not involved in day-

to-day operations; he never hired or had any relationship with the other individual Defendants; he was never aware of communications with Plaintiffs; and his was a nominal role in Defendant Offplan Millionaire AG (Id., ¶¶ 25-49). Plaintiffs seek to test these assertions through discovery.

Although Plaintiffs claim no jurisdictional discovery has been completed (Doc. 76 at 5), Nedela has served his answers to Plaintiffs' first set of interrogatories (Doc. 79-2) and he has responded to Plaintiffs' first request for the production of documents, largely by stating that he will "produce all relevant and non-privileged documents responsive to [the] request[s], if any, that are within his possession, custody or control in accordance with applicable law." (Doc. 79-1, pp. 3-7). The Court understands Nedela has provided his lawyers with over 6,000 documents for review, but they have not been produced to Plaintiffs, and Nedela has not been deposed because he claims "his Swiss counsel subsequently made him aware that his deposition and production of documents would put him at serious risk of criminal prosecution in Switzerland if the proper procedures were not followed." (Doc. 79 at 1). Plaintiffs dispute this conclusion and contend that discovery can and should be had.

The Swiss lawyers Plaintiffs and Nedela have consulted agree that, according to Art. 271 para. 1 of the Swiss Criminal Code, it is an offense for anyone to carry out "activities on behalf of a foreign state *on Swiss territory* without lawful authority, where such activities are the responsibility of a public authority or public official" as well as for anyone to carry out "such activities for a foreign party or organization" or to encourage such activities. Hence, a foreign request for obtaining evidence *in Switzerland* – such as an order for pre-trial discovery – is subject to prior authorization by the Swiss Federal Department of Justice and Police (Docs. 75-1 through 75-4, emphasis added). Nedela

argues that his deposition and production of documents implicate Art. 271 and perhaps Art. 273 of the Swiss Criminal Code and are subject to the Hague Convention.[1] For these reasons he contends that he should not be compelled to comply without following the procedures set forth in the Hague Convention. Plaintiffs argue that there is no showing of a legitimate threat of prosecution or that these Swiss laws apply to their discovery requests. The Southern District of New York has explained:

> [A] party seeking an order to apply Hague Convention procedures in lieu of the procedures set forth in the Federal Rules of Civil Procedure must demonstrate that a specific foreign law "actually bars the production or testimony at issue." Alfadda v. Fenn, 149 F.R.D. 28, 34 (S.D.N.Y. 1993). "In order to meet that burden, the party resisting discovery must provide the Court with information of sufficient particularity and specificity to allow the Court to determine whether the discovery sought is indeed prohibited by foreign law." Id. Notably, however, the Court's ultimate task "is not to definitively determine what Swiss law is, but rather to decide whether the risk of prosecution under Article 271 is so great" as to warrant a protective order. Microsoft Corp. v. Weidmann Elec. Tech. Inc., No. 5:15-CV-153 (GWC), 2016 WL 7165949, at *12 (D. Vt. Dec. 7, 2016).

EFG Bank AG v. AXA Equitable Life Ins. Co., 17-CV-4767 (JMF), 2018 WL 1918627, at *1 (S.D.N.Y. Apr. 20, 2018). After considering the parties' arguments and legal authorities the Court is not persuaded that Swiss Art. 271 and 273 bar the requested production and deposition, or that they actually subject Nedela or his lawyers to potential criminal liability or threat of criminal prosecution.

Plaintiffs have asked Nedela to produce information "at the offices of Baker, Donelson, Bearman Caldwell & Berkowitz, PC, c/o Hal K. Litchford at SunTrust Center, 200 South Orange Ave., Suite 2900, Orlando Florida 32801" (Doc. 64-4). And, the Court

---

[1] The Hague Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters and The Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters.

- 6 -

understands the documents are already in the possession of Nedela's lawyers in Miami, Florida (See Doc. 70, ¶ 5). So, there is no need to obtain the documents in Switzerland. And, while Nedela is a resident of Switzerland, he is a *citizen* of Germany.[2] Nedela cites no cases applying these Swiss law provisions to preclude someone who is not a Swiss citizen from producing his own documents[3] outside of Switzerland. Although Nedela objects that Plaintiffs are asking him "to perform an end-run around his legal obligations, which is not contemplated by Swiss law," (Doc. 79 at 7), it is not the Court's task to "definitively determine what Swiss law is;" rather, it is Nedela's burden to show that the specific foreign law "actually bars the production or testimony at issue." EFG Bank AG, supra. The Court finds that Nedela has not met his burden with respect to the documents. See, e.g., EFG Bank AG, 2018 WL 1918627, at *2 ("Significantly, however, decisions of the Swiss Federal Department of Justice and Police ("FDJP")—an administrative, non-judicial body—indicate that Swiss law does not preclude the voluntary production of documents by a private party and that "voluntary" is defined broadly to include the production of discovery so long as the party faces only procedural consequences rather than criminal sanctions for its failure to produce.").

As for the requested deposition, the Court agrees that if it takes place in Switzerland, that country's procedures should apply. But the Court sees no reason why the deposition must occur in Switzerland. There has been no showing that Nedela can only be deposed in Switzerland. And, Plaintiffs are on record that they will meet Nedela

---

[2] Despite counsel's representation in the response brief that Nedela is a resident "and citizen" of Switzerland (Doc. 79 at 15), he previously declared, under penalty of perjury, that he was a German citizen. (Doc. 56-1, ¶3).

[3] The fact that documents were tendered to Nedela's Florida counsel by Nedela confirms that they were "currently in [Nedela's] possession, custody, or control" (Doc. 64-4 at 11).

"anywhere at any time" to take his deposition (Doc. 76 at 20). There is ample precedent for permitting or ordering a deposition to occur outside of Switzerland. See Schindler Elevator Corp. v. Otis Elevator Co, 657 F. Supp. 2d 525, 529 (D.N.J. 2009) ("There is no affront to Swiss sovereignty by virtue of a deposition in New Jersey or at some convenient location outside of Switzerland."); Calixto v. Watson Bowman Acme Corp., No. 07-60077, 2008 WL 4487679, at *3 (S.D. Fla. Sept. 29, 2008) (Swiss resident ordered to appear for deposition in London, or a location otherwise convenient, pursuant to the Federal Rules); Triple Crown Am., Inc. v. Biosynth AG, No. 96-7476, 1998 WL 227886, at *4 (E.D. Pa. Apr. 30, 1998) (ordering depositions of Swiss corporation's agents occur in Pennsylvania, with reimbursement for reasonable costs); Ward-THG, Inc. v. Swiss Reinsurance Co., No. 96-8100, 1997 WL 83294, at *1 (S.D.N.Y. Feb. 27, 1997) (depositions of Swiss nationals to occur in the United States, with reimbursement for associated travel costs); Roberts v. Heim, 130 F.R.D. 430 (N.D.Cal.1990) (ordering that deposition of Swiss national and resident proceed in San Francisco); see also In re Honda Am. Motor Co. Dealership Relations Litig., 168 F.R.D. 535, 538-40 (D.Md.1996) (ordering deposition of Japanese defendant in Maryland, noting: "if a federal court compels discovery on foreign soil, foreign judicial sovereignty may be infringed, but when depositions of foreign nationals are taken on American or neutral soil, courts have concluded that comity concerns are not implicated.").

Nedela has already participated in the case by submitting his declaration with attached documents, answering interrogatories, and responding to requests for production (while not producing the documents). He objected to Plaintiffs' motion to conduct jurisdictional discovery (Doc. 65) but, after the Court allowed the discovery (Doc. 66) he moved (with Plaintiffs), to extend the deadline to complete it (Doc. 67). It is only

now, after receiving that extension, presenting some of his evidence, and delivering other evidence to his Florida lawyers, that Nedela seeks to avoid discovery due to Swiss law. As Judge Kovachevich observed in a similar situation:

> While this Court has all due respect for the laws of foreign sovereignties and a citizen's allegiance to said laws, defendants have subjected themselves to the privileges and protections of this country's laws by moving the Court to dismiss for lack of personal jurisdiction and they cannot now deny the obligations and duties that foreseeably arise from those same laws.
>
> As the Supreme Court stated in <u>Insurance Corp. Of Ireland, Ltd. v. Compagnie Des Bauxites De Guinee,</u> 456 U.S. 694, 706, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982), "[b]y submitting to the jurisdiction of the court for the limited purpose of challenging jurisdiction, the defendant agrees to abide by that court's determination on the issue of jurisdiction: That decision will be res judicata on that issue in any further proceedings." The Supreme Court also noted that "as a sanction for failure to comply with a discovery order directed at establishing jurisdictional facts, [a court may] proceed on the basis that personal jurisdiction over the recalcitrant party has been established [.]" <u>Id.</u> at 695. FED. R. CIV. P. Rule 37(b)(2)(A) permits such a result so long as the sanction is just and directly related to the claim which was the subject of the discovery order. <u>Id</u>. at 707.

<u>Coca-Cola Foods v. Empresa Comercial Internacional De Frutas S.A</u>., 96-358-CIV-T-17C, 1997 WL 370121, at *7 (M.D. Fla. June 12, 1997). Taking Nedela at his word when he says he is "not attempting to evade discovery" and "genuinely wants to comply with the Court's order and provide the jurisdictional discovery requested" (Doc. 79), the Court finds that Nedela can furnish the discovery in this district or some other location outside Switzerland and accomplish that goal. The failure to do so may result in a finding that personal jurisdiction over Nedela has been established.

While Nedela argues the need to comply with the Hague Convention and the procedures prescribed therein, Plaintiffs correctly observe that such compliance is not

mandatory. In Societe Nationale Industrielle Aerospatiale, et al. v. United States District Court for the Southern District of Iowa, 482 U.S. 522, 107 S.Ct. 2542, 96 L.Ed.2d 461 (1987), the Supreme Court held that the discovery procedures provided by the Hague Convention do not necessarily control discovery with respect to foreign litigants before an American court. The Court rejected the notion that the Hague Convention requires the use of its procedures to the exclusion of the Federal Rules. Id. at 533, 107 S.Ct. at 2550. The Court also declined to "announce a new rule of law that would require first resort to Convention procedures whenever discovery is sought from a foreign litigant." Id. at 542, 107 S.Ct. at 2554. When determining whether to require use of the optional Hague Convention procedures, or to permit discovery pursuant to the Federal Rules, the Supreme Court instructed courts to consider the particular facts of each case, the sovereign interests at issue, and the likelihood that resort to Hague Convention procedures will prove effective. Id. at 544, 107 S.Ct. at 2555.

Nedela acknowledges that the Court has the discretion to supersede the Hague Convention and the procedures prescribed therein, but contends that it may not disregard the specific comity analysis set out in Aerospatiale, which, in his view, "militates in favor of allowing discovery to proceed under the laws of Switzerland, pursuant to the procedure set forth in the Hague Convention." (Doc. 79 at 14, citing 482 U.S. at 543-44 & n. 28). There is authority stating that the Court need not reach this analysis because the parties can obtain the remaining discovery without running the risk of violating Swiss law. See EFG Bank AG, 2018 WL 1918627, at *3 ("Because EFG does not meet its burden to show that the discovery request actually conflicts with Swiss law, the Court need not address the parties' arguments concerning Societe Nationale Industrielle Aerospatiale v. United States District Court for the Southern District of Iowa, 482 U.S. 522 (1987).").

Nonetheless, applying the analysis, the Court finds that the facts of this case do not warrant recourse to the Hague Convention procedures.

The Restatement (Third) of Foreign Relations Law § 442(1)(c) instructs:

> In deciding whether to issue an order directing production of information located abroad, and in framing such an order, a court or agency in the United States should take into account the importance to the investigation or litigation of the documents or other information requested; the degree of specificity of the request; whether the information originated in the United States; the availability of alternative means of securing the information; and the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located.

Restatement (Third) of Foreign Relations Law § 442 (1987). Applied here, the discovery sought is clearly important, if not essential. Indeed, prosecution of this action has been at a standstill pending resolution of the jurisdictional issue. This factor weighs against the use of Hague Convention procedures. The specificity of the request considers how burdensome it will be to respond to the discovery. "Broad, generalized requests for information weigh in favor of utilizing Hague procedures, while specific, limited requests disfavor the use of Hague procedures." Salt River Project Agric. Improvement & Power Dist. v. Trench France SAS, 303 F. Supp. 3d 1004, 1008 (D. Ariz. 2018). Plaintiffs' requests are targeted to the jurisdictional issue and the documents are apparently, already on United States soil. This weighs against the need for Hague Convention procedures. The Court presumes that the documents and testimony did not originate in the United States. This factor favors use of the Hague Convention procedures. There are alternative means of securing the information which are superior to the delay inherent in use of the Hague Convention. This factor weighs against utilizing the Hague Convention

procedures. In considering the final comity factors, the Court notes that Plaintiffs and Nedela are not Swiss citizens, the documents are currently not on foreign soil, and the deposition can be held outside Switzerland. Therefore, compliance with this discovery does not appear to undermine Swiss interests.

While Nedela argues that the documents contain trade secrets and the protection of those secrets is an important Swiss interest he has already responded to the requests for production by objecting to the production of privileged information (Doc. 79-1). The Court recognizes privileges appropriately asserted. Absent a showing that *all* the documents are trade secrets (a position which is untenable, considering that Nedela has already attached some of them to his declaration), there is no reason why non-privileged documents cannot be produced, consistent with Nedela's response to the request for production. In sum, the facts of this case do not warrant use of the Hague Convention procedures.

The Court is persuaded by the great weight of authority that the present circumstances justify production of the documents in the United States and the taking of Nedela's deposition at a suitable location outside Switzerland, with Plaintiffs to reimburse Nedela's reasonable travel expenses. Plaintiffs' motion to compel is therefore **GRANTED in part.** Nedela shall make himself available for deposition at a location agreed upon by the parties, outside of Switzerland, within 30 days. Plaintiffs shall pay all reasonable costs of Nedela's travel and subsistence incurred relating to the deposition. Nedela shall also produce the documents sought in the request to produce, consistent with his response to the request, within 15 days of the date of this Order. To the extent Nedela has asserted that certain documents are trade secrets, he shall provide a privilege log. As Nedela has already responded to the interrogatories, the motion to compel them is **DENIED**. Plaintiffs

shall file their response to Nedela's motion to dismiss within 14 days after the parties receive the transcript of Nedela's deposition. Plaintiffs Unopposed Motion to File a Reply (Doc. 80) is **DENIED.**

**DONE** and **ORDERED** in Orlando, Florida on March 1, 2019.

THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties