UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

NICHOLAS J. RANDALL and FAN FENG,

    Plaintiffs,

v.	Case No:	6:17-cv-2103-Orl-31TBS

OFFPLAN MILLIONAIRE AG,
CAPINVEST LLC, JOACHIM OLIVER
NEDELA, STEPHEN JORDAN-QUAYLE,
CARL DHIR, CRESCENT REAL ESTATE
MANAGEMENT, INC., DANIEL J.
DORAN, JR. and LUCRETIA L.
DORAN,

    Defendants.

## ORDER

Before the Court is Defendant Joachim Oliver Nedela's Motion for Extension of Time Relating to March 1, 2019 Order and for Order Requiring Certain Deposition Expenses to be Paid By Plaintiffs (Doc. 83). The motion is opposed by Plaintiffs (Doc. 84). Since the filing of the motion, Nedela has filed two supplements (Docs. 85 and 86). Now the motion, as supplemented, is **DENIED**.

Background

Plaintiffs allege that Defendants violated the Federal Racketeer Influenced Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968, and the Florida Racketeer Influenced and Corrupt Organizations Act, FLA. STAT. §§ 895.01-895.06, by collectively conspiring to participate in an enterprise for the common purpose of engaging in racketeering activity, specifically wire and mail fraud, concerning the conveyance and maintenance of real property located in the United States, and that enterprise conduct occurred in Orange

County, Florida, where the majority of the properties are located (Doc. 17, ¶¶ 243-311). Nedela has made a limited appearance and filed a motion to dismiss for lack of personal jurisdiction and failure to state a claim upon which relief can be granted (Doc. 56). On September 12, 2018, Plaintiffs filed a consolidated preliminary response to the motion to dismiss which included a motion for leave to conduct discovery limited to the issue of personal jurisdiction, and to stay their response to the motion to dismiss until after the completion of that discovery (Doc. 64). The same day, Plaintiffs served on Nedela their First Set of Interrogatories Concerning Personal Jurisdiction and First Request for Production of Documents Concerning Personal Jurisdiction (Doc. 64-4). Plaintiffs also served a notice of taking Nedela's deposition without specifying the date or place while simultaneously requesting deposition dates and offering to take the deposition at any location and time convenient to Nedela. He filed a response opposing the request to take jurisdictional discovery (Doc. 65).

On October 23, 2018, the Court granted Plaintiffs' motion to conduct discovery and stayed their response to Nedela's motion to dismiss for forty-five days "during which time [Plaintiffs] may engage in discovery that is limited to the jurisdictional issues raised by Nedela" (Doc. 66 at 11). The Court found that "Plaintiffs are entitled to obtain the limited jurisdictional discovery sought for the purpose of responding to Nedela's motion to dismiss" (Id.).

On November 13, 2018, Plaintiffs and Nedela jointly moved for an extension of the time to complete jurisdictional discovery and the deadline for Plaintiffs to respond to Nedela's motion to dismiss (Doc. 67). The parties said Nedela had gathered more than 6,000 documents to review for responsiveness to Plaintiffs' discovery requests and that they were experiencing difficulty clearing a mutually convenient day to hold Nedela's

deposition (Doc. 75, citing Doc. 67 at 2). The Court granted the motion and extended to January 10, 2019 the deadline for Plaintiffs to respond to the motion to dismiss (Doc. 69 at 1).

On November 27 and 30, 2018, Nedela informed the Court that he believes there are obstacles to conducting the jurisdictional discovery under Swiss law and he sought relief from the jurisdictional discovery deadlines (See Docs. 70, 70-1, 71, 71-1). On December 3, 2018, the Court denied without prejudice, Nedela's request for an additional extension of time noting: "[t]he Court does not know Swiss law or how it impacts jurisdictional discovery in this case" (Doc. 72 at 1). The Court added that it "does not now intend to strictly enforce the discovery deadline established in its Order," and instructed that "[w]hen the parties better understand the situation in Switzerland, including the sequence, timing, and results of actions there, they should update the Court which will, when it has more concrete information, entertain a motion to enlarge the time for jurisdictional discovery" (Id. at 1-2). Plaintiffs sought an additional brief extension of time which the Court granted (Docs. 73-74).

On the date for completion of the jurisdictional discovery and the submittal of Plaintiffs' response to Nedela's motion to dismiss, the parties filed a Joint Notice of Impasse Regarding Jurisdictional Discovery (Doc. 75). Plaintiffs filed a motion to compel jurisdictional discovery from Defendant Nedela and he filed a response (Docs. 76, 79). In these papers, the parties dispute whether Nedela, a German citizen, resident in Switzerland, can be compelled to produce documents and sit for a deposition on the issue of whether this Court has personal jurisdiction over him. By Order dated March 1, the Court found:

> The Court is persuaded by the great weight of authority that the present circumstances justify production of the documents in the United States and the taking of Nedela's deposition at a suitable location outside Switzerland, with Plaintiffs to reimburse Nedela's reasonable travel expenses. Plaintiffs' motion to compel is therefore **GRANTED in part**. Nedela shall make himself available for deposition at a location agreed upon by the parties, outside of Switzerland, within 30 days. Plaintiffs shall pay all reasonable costs of Nedela's travel and subsistence incurred relating to the deposition. Nedela shall also produce the documents sought in the request to produce, consistent with his response to the request, within 15 days of the date of this Order. To the extent Nedela has asserted that certain documents are trade secrets, he shall provide a privilege log.

(Doc. 81 at 12). The instant motion, as supplemented, followed.

Analysis

*Production of Documents*

Nedela seeks permission to produce the documents sought in Plaintiffs' request to produce "on a rolling basis" (Doc. 83 at 1). He has also requested an extension of time until April 8, 2019 in which to complete the production, citing the need for lengthy review and redactions in order to assure compliance with Swiss law. Nedela notes that his Swiss lawyer has filed a petition with the Federal Department of Justice and Police ("FDJP") in Switzerland requesting authority to produce the documents without broad redactions of trade secrets but, "unless and until such authorization is granted, Mr. Nedela must proceed with the redaction process" (Doc. 83 at 3-4). The passage of time has made these requests moot.

In supplemental papers, Nedela advises that the review and redaction process has been completed and he "is prepared to produce the over 5,000 documents *as soon as the parties can reach agreement on the terms of the confidentiality agreement*" (Doc. 85 at 2; Doc. 86 at 2 – emphasis added). To the extent this is a request for a protective order to

preclude the production unless Plaintiffs execute a confidentiality agreement, it is **DENIED.** The Court has already provided for the assertion of appropriate privileges and the sought-after delay is predicated on the claimed need for redaction of allegedly privileged information. Considering that Nedela has taken the position that he was just a figurehead with a mere nominal role in Defendant Offplan Millionaire AG (Doc. 56-1), this belated insistence on a confidentiality agreement is puzzling. While the parties are free to enter into a stipulation regarding the documents, the Court sees no reason to order the execution of a confidentiality agreement as a precondition to document production. **The documents shall be produced, along with any privilege log, within seven calendar days of the date of this Order.**

*Deposition*

Nedela also resists the taking of his deposition, contending that he "cannot risk subjecting himself to penalties or criminal liability in a country with whose laws he is unfamiliar" (Doc. 83 at 5). Nedela offers to travel with his Swiss lawyer to Austria for his deposition but asks the Court to require that Plaintiffs submit a written opinion confirming that his appearance in Austria will not subject him to any criminal liability under that country's laws. He also requests that Plaintiffs cover the travel expense associated with his Swiss lawyer's attendance at the deposition. Nedela contends that Plaintiffs refusal to agree to this plan is unreasonable.

The Court's prior Order states that "Nedela shall make himself available for deposition at a location **agreed upon by the parties**, outside of Switzerland, within 30 days. Plaintiffs shall pay all reasonable costs of **Nedela's travel and subsistence** incurred relating to the deposition" (Doc. 81 at 12). The Order does not allow expenses for Nedela's Swiss lawyer to accompany him to a deposition outside Switzerland, nor would

such be reasonable under the facts of this case. And, the Court is unaware of any authority empowering it to compel a lawyer for a plaintiff to provide a legal opinion to a defendant in the same case. Even if such were ethically appropriate (which is highly questionable), Nedela already has his own attorneys in the United States and Switzerland. Given his current representation, Nedela has not shown a credible need to borrow counsel from Plaintiffs. Accordingly, the motion, to the extent it seeks this relief, is **DENIED**.

Perhaps intuiting the Court's reluctance to go along with his suggestion, Nedela next advises that his Swiss lawyer has submitted a request to the FDJP for authorization to give his deposition testimony from Switzerland via videoconference. Nedela advises that if his lawyers, Plaintiffs' attorneys and this Court endorse his application for authorization to conduct the deposition in Switzerland then Nedela's Swiss lawyer anticipates that Nedela will be able to appear safely at his deposition with the consent of the Swiss authorities (Docs. 85 and 86). To the extent this is a request for the Court to endorse an application it previously found unnecessary, it declines to do so. Additionally, considering the over 5,000 documents to be produced by Nedela, it is not apparent that a videoconference will be effective or appropriate, absent agreement by Plaintiffs.

After consideration of all the papers filed, the Court finds no reason to disturb its previous Order compelling Nedela to sit for his deposition. Although he maintains that he is "committed to fully complying with the Court's Order" (Doc. 83 at 2), his most recent filings cast doubt on this assertion. Considering Nedela's demonstrated reluctance to cooperate with the scheduling of his deposition, the parties' inability to agree to a location without preconditions, the presence of the documents in Florida, the appearance of Florida lawyers on Nedela's behalf, and the absence of any showing that he will be

prejudiced if the deposition is taken in this district, it is **ORDERED** that **absent agreement by the parties to alternative arrangements, Nedela shall** appear in the Middle District of Florida for the taking of his deposition within 30 days from the date of this Order. Plaintiffs shall pay all reasonable travel and subsistence expenses for Nedela to travel for this purpose and his presence within the United States for this purpose shall not be deemed relevant to the question of whether the Court has personal jurisdiction over him with respect to this action.

    **DONE** and **ORDERED** in Orlando, Florida on April 11, 2019.

THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to:

    Counsel of Record
    Unrepresented Parties