GRANTEDITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

NICHOLAS J. RANDALL and FAN FENG,

      Plaintiffs,

v.                                                    Case No:   6:17-cv-2103-Orl-31TBS

OFFPLAN MILLIONAIRE AG,
CAPINVEST LLC, JOACHIM OLIVER
NEDELA, STEPHEN JORDAN-QUAYLE,
CARL DHIR, CRESCENT REAL ESTATE
MANAGEMENT, INC., DANIEL J.
DORAN, JR., and LUCRETIA L. DORAN,

      Defendants.

_____

## REPORT AND RECOMMENDATION

Pending before the Court is Defendant's Motion to Dismiss for Lack of Jurisdiction and Failure to State a Claim (Doc. 56). Following a protracted period of jurisdictional discovery, Plaintiffs filed their response (Doc. 92) and I allowed a reply (Doc. 95). Now, after due consideration, I respectfully recommend that the motion be **granted**.

### Background

Plaintiffs Nicholas J. Randall and Fan Feng allege that Defendants violated the Federal Racketeer Influenced Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968, and the Florida Racketeer Influenced and Corrupt Organizations Act, FLA. STAT. §§ 895.01-895.06, by "collectively conspiring to participate in an enterprise for the common purpose of engaging in racketeering activity, specifically wire and mail fraud, concerning the conveyance and maintenance of real property located in the United States, where the majority of the properties are located in, and enterprise conduct occurred in, Orange County, Florida ("RICO Enterprise")." (Doc. 64 at 2-3, citing Doc. 17, ¶¶ 243-311). Six of

the Defendants have been defaulted and Plaintiffs have been unable to serve a seventh (See Docs. 26, 27, 31, 32, 48, 49 and 57). The remaining Defendant, Joachim Oliver Nedela, has made a limited appearance and filed the instant motion to dismiss, asserting lack of personal jurisdiction and failure to state a claim upon which relief can be granted (Doc. 56).

Plaintiffs filed a consolidated preliminary response to the motion to dismiss which included a motion for leave to conduct discovery limited to the issue of personal jurisdiction, and to stay their response to the motion to dismiss until after the completion of that discovery (Doc. 64). Nedela opposed the request to take jurisdictional discovery (Doc. 65). On October 23, 2018, the Court granted Plaintiffs' motion to take discovery and stayed their response to Nedela's motion to dismiss for forty-five days "during which time [Plaintiffs] may engage in discovery that is limited to the jurisdictional issues raised by Nedela." (Doc. 66 at 11).

Nedela resisted discovery and a motion to compel was filed (Doc. 76) and granted in part (Doc. 81). This resulted in the taking of Nedela's deposition which has been filed with the Court (Doc. 91). Plaintiffs have now responded to the motion to dismiss (Doc. 92), Nedela has replied (Doc. 95), and the matter has been referred to me for a report and recommendations.

The Amended Complaint

Plaintiffs' amended complaint contains more than 300 paragraphs and is nearly 100 pages long. It alleges that the RICO Enterprise purchased real property in the United States purportedly on behalf of Plaintiffs and other investors, while concealing material facts regarding the price, ownership, condition, and liabilities of the properties, to fraudulently profit the members of the enterprise. Defendants, including Nedela, are

alleged to have knowingly participated in the RICO Enterprise. The averments specific to

Nedela are that:

- Defendant Nedela is the individual who created the infrastructure for the RICO Enterprise and brought many of the other Defendants into the fold.

   a. Nedela founded and owns Offplan, which he operates as Prime Asset, and has branded and promoted the company as a specialist in real estate market analysis and sourcing for investors in foreign property.

   b. Nedela created Prime Asset's wholly-owned U.S. subsidiary, Capinvest, to do Prime Asset's transactions in the U.S. under a separate name. Nedela executed corporate documents for Capinvest, including signing the Articles of Amendment that added Dan Doran a new manager of Capinvest on December 14, 2012, which were eventually submitted by U.S. mail to the Illinois Secretary of State, and filed over a year later on December 31, 2013.

   c. Nedela does not interact directly with any investors, but has hired, authorized and/or ratified Jordan, Dhir, and Dan Doran to operate the fraudulent investing model.

   d. Nedela has also furthered the RICO Enterprise by executing the Riverdale Signed Documents, which deceptively appeared to transfer the 12 Riverdale Units to Randall but did not. Nedela signed documents transferring ownership of property that his corporation did not own, and in the process of doing so, signed a Hold Harmless agreement supposedly excusing Defendant and co-conspirator Crescent from any liability (Doc. 17, ¶ 254).

Nedela:

- Served as the President and sole Director of corporate Enterprise members Offplan Millionaire AG, d/b/a Prime Asset Investments (Doc. 17, ¶ 8);

- Created Offplan and its U.S. wholly-owned subsidiary Capinvest to serve as the corporate structure of the RICO Enterprise, (id., ¶¶ 8, 12, 254);

- Directed the activities of Offplan and Capinvest, (id., ¶¶ 12, 250, 254), which included "undert[aking] to assist Feng and Randall, in buying real property in Orlando, but knowingly misrepresented the identity of the seller(s) of the property purchased by Plaintiffs as well as the ownership, price, rental status, habitability, marketability, demand, and other material characteristics of those Orlando properties," (id., ¶ 24(b));

- Executed false or misleading documents to further the Enterprise, (id., ¶¶ 23(d), 121, 250(b), 254); and

- Mailed those false or misleading documents to a co-conspirator(s) in Florida to further the Enterprise, namely the Riverdale Signed Documents, knowing that these would be delivered to Randall as fraudulent evidence of the transfer of title in the Riverdale Units to Plaintiffs, (see id., ¶ 121, 266).

The amended complaint includes four counts against all Defendants: Count I for violation of the federal RICO statute; Count II for violation of the Florida RICO Act; Count III for conspiracy to commit RICO under 18 U.S.C. § 1962(d); and Count IV for conspiracy to commit RICO under the Florida RICO Act.

The Motion to Dismiss

Nedela seeks dismissal of the amended complaint against him for lack of personal jurisdiction and the failure to state a claim upon which relief can be granted. See FED. R. CIV. P. 12(b)(2), (6). The motion is supported by Nedela's declaration in which he represents that he is a German citizen, resident in Switzerland, who has never met or communicated with Plaintiffs and "did absolutely nothing that could be considered illegal or subject him to this Court's jurisdiction." (Doc. 56 at 1). Nedela states that he has "never personally engaged in marketing, advertising, solicitations, or service activities" in Florida; he has "never owned or leased any real property located in the State of Florida;" and he "only visited Florida one time 38 years ago when [he] was 8 years old." (Doc. 56-1, ¶¶ 5, 17, 21). Nedela also declares:

> 23. I am a 50% owner of CO-Handelszentrum GMBH ("CO-Handelszentrum"), a Swiss company.
>
> 24. CO-Handelszentrum is a company that specializes in Swiss company formation, registration, and administration. Specifically, it incorporates and administers Swiss companies and Swiss corporate structures for international corporate groups and private individuals.

25. CO-Handelszentrum was engaged by Stephen Jordan Quayle ("Jordan") in 2006 to incorporate Offplan Millionaire AG ("Offplan").

26. CO-Handelszentrum agreed to provide the following services, among others, to Jordan:

    a. Incorporation of Swiss AG ("Offplan Millionaire AG")

    b. Provision of Nominee Shareholders and two local directors

    c. Bearer shares to be held under fiduciary arrangements in safekeeping account with Credit Suisse, Zug

    d. Provision of registered office

    e. Basic administrative services incl. (telephone answering/mail/fax forwarding)

    f. Maintenance of accounting records and monthly MIS reporting

    g. Opening of Swiss Bank Account

    h. VAT registration in Switzerland and completion of quarterly VAT returns (when required)

    i. Submission of annual tax returns

    j. Liaison with appointed auditors re annual audit

28. Through this engagement, CO-Handelszentrum also agreed, among other things, to act as Secretary and Registrar of Offplan, ensure that Offplan has a registered office, and keep and maintain books of the company.

29. In addition, CO-Handelszentrum agreed to provide individuals to serve as nominee shareholders and local nominal directors of the company, including myself. As a local nominal director I had signatory authority for the company and performed administrative tasks, but was not involved in the operations of the company.

30. This provision of local nominal directors is routinely requested by individuals or entities outside of Switzerland who engage CO-Handelszentrum to form a Swiss company because under Swiss law, every Swiss company must have at

least one director who is a resident of Switzerland and is authorized to sign on behalf of the company.

31. I served as President of the Board of Directors in my capacity as local nominal director of Offplan. I have never served as CEO or any other executive or officer of Offplan or any of its related entities.

32. In addition, at the time of Offplan's incorporation, Swiss law also required that every member of the board of directors also be a shareholder of the company. Thus, as a local nominal director of Offplan, I temporarily held one share of the company in nominee capacity. I was never a shareholder in any other capacity nor was I an ultimate beneficial owner of Offplan.

35. [I]n exchange for the services provided, Offplan and the individuals who executed the agreement agreed to pay fees, including, for example, task-related fees, incorporation fees, notary fees, and commercial registration fees. Other than these fees, I received no financial gains from Offplan or interest in its business or any of its alleged activities.

36. My involvement with Offplan and its related entities, including as director or in other corporate capacities, was solely the result of Offplan's engagement of CO-Handelszentmm and as a function of the administrative services being rendered by CO-Handelszentrum.

37. For example, I assisted with the incorporation of Offplan as contemplated by the relevant agreements. My only motive in and purpose for creating Offplan was to fulfill CO-Handelszentrum's contractual duties.

38. I was not aware of any fraudulent or wrongful conduct being performed by Offplan or any of its related entities or individuals. Nor did I participate in any such conduct.

39. I was not involved in the day-to-day operations of Offplan or any of its related entities.

40. I have never communicated directly with either Nicholas J. Randall or Fan Feng or any other clients of Offplan. I do not have any knowledge regarding Plaintiffs' communications with any of the other Defendants relating to the properties owned or controlled by Offplan or its related companies. Nor was I aware of any of the representations being made during any

such communications or any arrangements between Offplan and its clients.

41. I have never hired Jordan, Carl Dhir, Dan Doran or Lucretia Doran or authorize[d] them to act on my behalf. Nor have I ever acknowledged that any of the Defendants in this action could or would act on my behalf. I have never had any [] relationship with any of the Defendants other than in my role in carrying out CO-Handelszentrum's administrative services.

44. In light of the Swiss legal requirements, Swiss Companies such as Offplan regularly employ the services of CO-Handelszentrum to provide local nominal directors who serve as signatories for the execution of corporate documents at the direction of the individuals who own or operate the companies.

45. With regard to any documents I executed relating to the Riverdale properties owned by Offplan or its related companies, I signed such documents at the direction and instruction of Carl Dhir in my capacity as local nominal director and authorized signatory and as part of the administrative services offered to Offplan. I was unaware of any communications or arrangements Offplan had with Plaintiffs or any clients relating to the Riverdale properties (or any other properties). I have only been aware of the information contained in the limited documents provided to me for signature as nominal director.

46. With regard to documents incorporating Capinvest, LLC, I executed such documents at the direction and instruction of Carl Dhir as part of the administrative services offered to Offplan in my capacity as local nominal director of Offplan (which served as the manager of Capinvest). Any documents I signed relating to Capinvest was solely in my capacity as local nominal director of Offplan. I have never been a director or officer of Capinvest nor have I directed the conduct or been involved in the operations of Capinvest.

47. I did not understand or believe that any of the information in any of the documents I executed relating to Offplan or its related companies in carrying out the administrative functions on behalf of CO-Handelszentrum were factually inaccurate, nor did I believe that any purported transfers under those documents were invalid.

48. I do not own any interest in Offplan or any of its related companies. Although I did previously and temporarily own a nominal interest in Offplan as a nominee shareholder, my

ownership interest was solely due to a Swiss Law requirement existing in 2006 that directors were required to have a nominal shareholder.

49. Neither I nor CO-Handelszentrum GmbH as the administrator for the Company had any transactional involvement with any business conducted by Offplan, participated directly in any business of Offplan, or received any revenues from such business other than fees paid to CO-Handelszentrum GmbH for provision of its administrative services.

(Doc. 56-1, ¶¶ 23-26, 28-32, 35-41, and 44-49 - certain internal references omitted).

Attached to Nedela's declaration are copies of the Client Services Agreement; an excerpt of the Swiss Civil Code; Offplan's share ledger; a Company Administration Agreement between CO-Handelszentrum GmbH, Offplan, and Stephen Quayle, Kevin Jones and Carl Dhir; and email instructions received from Carl Dhir to sign documents relating to the transfer of properties in the Chicago-area village of Riverdale (Doc. 56-1, pp. 9-31).

Nedela contends that the allegations in the amended complaint do not satisfy Florida's long-arm statute because no general or specific personal jurisdiction over him is shown, the exercise of jurisdiction would not comport with due process in that he has no minimum contacts with Florida, and the exercise of jurisdiction over him would offend traditional notions of fair play and justice. Nedela also contends that the amended complaint fails to state a claim against him because Plaintiffs fail to allege that he participated in a RICO enterprise and Plaintiffs fail to adequately plead an agreement.

## Discussion

"To survive a motion to dismiss, a [pleading] must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). While this standard "does not require 'detailed factual allegations,' ... it demands

more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. (quoting Twombly, 550 U.S. at 555). A pleading must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. Although the court must accept as true well-pled allegations, it is not bound to accept a legal conclusion couched as a factual allegation. Iqbal, 556 U.S. at 678.

"As a general rule, when the court is confronted by a motion raising a combination of Rule 12(b) defenses, it will pass on the jurisdictional issues before considering whether a claim was stated by the complaint." Madara v. Hall, 916 F.2d 1510, 1514, n.1 (11th Cir. 1990).

<u>Jurisdiction</u>

When deciding a motion to dismiss for lack of personal jurisdiction the court may (1) rely on complaint allegations; (2) rely on complaint allegations and affidavit statements; or (3) conduct an evidentiary hearing and find facts. Sky Enterprises, LLC v. Offshore Design & Drilling Services, LLC, 3:16-CV-916-J-32PDB, 2017 WL 7309871, at *6 (M.D. Fla. Dec. 21, 2017), report and recommendation adopted, 3:16-CV-916-J-32PDB, 2018 WL 647434 (M.D. Fla. Jan. 31, 2018), citing Delong Equip. Co. v. Wash. Mills Abrasive Co., 840 F.2d 843, 845 (11th Cir. 1988). If the court decides personal jurisdiction based on complaint allegations and affidavit statements, it must accept as true the uncontroverted complaint allegations. Id., citing Morris v. SSE, Inc., 843 F.2d 489, 492 (11th Cir. 1988); Bracewell v. Nicholson Air Servs., Inc., 748 F.2d 1499, 1504 (11th Cir. 1984). If the defendant submits an affidavit that conflicts with a complaint allegation, the plaintiff must respond with an affidavit supporting the complaint allegation and if the affidavit statements conflict, the court must credit the plaintiff's and draw all reasonable inferences in the plaintiff's favor, particularly if jurisdictional questions intertwine with the

merits. Sky Enterprises, supra, citing Meier ex rel. Meier v. Sun Int'l Hotels, Ltd., 288 F.3d 1264, 1269 (11th Cir. 2002), Ruiz de Molina v. Merritt & Furman Ins. Agency, Inc., 207 F.3d 1351, 1356 (11th Cir. 2000), and Delong, 840 F. 2d at 845. An evidentiary hearing is not needed. The parties have had a sufficient opportunity to develop the facts through discovery and those facts are not in dispute (although the inferences that can be drawn from them are).

"A federal district court in Florida may exercise personal jurisdiction over a nonresident defendant to the same extent that a Florida court may, so long as the exercise is consistent with federal due process requirements." Licciardello v. Lovelady, 544 F.3d 1280, 1283 (11th Cir. 2008). The determination of whether a court has personal jurisdiction over a defendant involves a two-part analysis. First, the court must determine whether the plaintiff has alleged facts sufficient to subject the defendant to Florida's long-arm statute. Second, once it has determined that the long-arm statute is satisfied, the court must decide whether plaintiff's assertion of jurisdiction comports with the Constitution's requirements of due process and traditional notions of fair play and substantial justice. See Future Tech. Today, Inc. v. OSF Healthcare Sys., 218 F.3d 1247, 1249 (11th Cir. 2000); Sculptchair, Inc. v. Century Arts, Ltd., 94 F.3d 623, 626 (11th Cir.1996).

a. Florida's Long-Arm Statute

Under Florida's long-arm statute, a defendant may be subject to specific jurisdiction (if the action arises out of the defendant's contacts with Florida) or general jurisdiction (if the defendant engages in substantial and not isolated activity in Florida). See FLA. STAT. § 48.193(1) & (2). Nedela argues, and Plaintiffs do not dispute, that this Court does not have general personal jurisdiction over him. Plaintiffs maintain that the

Court has specific jurisdiction over Nedela under Fla. Stat. § 48.193(1)[1] because he is

alleged to be part of the mail fraud conspiracy. As the Jacksonville division of this Court

has explained:

> In Florida, civil conspiracy may be an independent tort. Walters v. Blankenship, 931 So. 2d 137, 140 (Fla. 5th DCA 2006). The elements of a cause of action for civil conspiracy are: (1) an agreement between two or more parties; (2) to do an unlawful act or to do a lawful act by unlawful means; (3) doing some overt act in pursuit of the conspiracy; and (4) damage to the plaintiff because of acts under the conspiracy. Philip Morris USA, Inc. v. Russo, 175 So. 3d 681, 686 n.9 (Fla. 2015). There is no requirement that each co-conspirator commit an act in furtherance of the conspiracy; it suffices that each knows about the scheme and helps in some way. MP, LLC v. Sterling Holding, LLC, No. 3D15-1062, 2017 WL 2794218, at *2 (Fla. 3d DCA June 28, 2017) ...

Sky Enterprises, 2017 WL 7309871, at *10. "[Florida's] long-arm statute can support

personal jurisdiction over any alleged conspirator where any other co-conspirator

commits an act in Florida in furtherance of the conspiracy, even if the defendant over

whom personal jurisdiction is sought individually committed no act in, or had no relevant

contact with, Florida." United Techs. Corp. v. Mazer, 556 F.3d 1260, 1281-82 (11th Cir.

2009); see also Tavakoli v. Doronin, 18-21592-CIV, 2019 WL 1242669, at *8 (S.D. Fla.

Mar. 18, 2019) (slip copy) (finding jurisdiction under Florida's long-arm statute because

"Florida's long-arm statute supports personal jurisdiction over an 'alleged conspirator

where any other co-conspirator commits an act in Florida in furtherance of the conspiracy,

even if the defendant over whom personal jurisdiction is sought individually committed no

act in, or had no relevant contact with, Florida." – internal citation omitted); Energy Source,

---

[1] The relevant portion of the long-arm statute provides that a person may be subject to the jurisdiction of a court in Florida "for any cause of action arising from.... [c]ommitting a tortious act within this state."
.

Inc. v. Gleeko Props., LLC, No. 10-21162, 2011 WL 3236047, at *6 (S.D. Fla. July 28, 2011) ("Florida law construes the state's long-arm statute to reach all of the alleged participants in a civil conspiracy, at least one act in furtherance of which is committed in Florida," citing Machtinger v. Inertial Airline Servs., Inc., 937 So. 2d 730, 734-36 (Fla. 3d DCA 2006), and Wilcox v. Stout, 637 So.2d 335, 336 (Fla. 2d DCA 1994) (holding that, if plaintiff successfully alleges that any member of a conspiracy commits a tortious act in Florida in furtherance of the conspiracy, then all of the conspirators are subject to Florida's long-arm jurisdiction)).

Plaintiffs believe they have sufficiently alleged both the existence of a RICO conspiracy and Nedela's participation as a co-conspirator to bring him within the jurisdiction of the Court. Nedela argues that Plaintiffs have not sufficiently pleaded a conspiracy claim against him because they have failed to adequately allege a conspiratorial agreement between Nedela and any of the other Defendants (Doc. 65 at 4). I previously found that "Plaintiffs' averments, construed liberally in their favor, allege a knowing participation in the RICO Enterprise." (Doc. 66 at 10). If limited solely to the pleadings, this conclusion remains true. But, the Court now has before it a much fuller record.

The crux of Nedela's position is that, despite Plaintiffs' allegations to the contrary, he was nothing more than a "nominal" director, without any knowledge of the conduct of the entities he administered. The averments in the amended complaint summarized above, liberally construed in Plaintiffs' favor and supplemented by Nedela's deposition testimony and exhibits rebut this characterization to a degree. There is no dispute that Nedela created each corporation that formed the structure of the alleged RICO Enterprise and he performed many corporate duties in his capacity as sole "President," "Director," or

"Manager."[2]  Despite his claim of ignorance with respect to "day to day operations," he was aware of how Offplan's business worked (see, e.g., Doc. 91, Deposition of Joachim Oliver Nedela, pp. 29:15 to 30:13; Docs. 92-21, 92-22). His approval was necessary for every financial transaction, and he required every invoice be sent to him and explained as part of annual financial reviews, reports, and accounting. (See, e.g., Docs. 92-1 through 92-4, 92-8, 92-9, 92-12 through 92-15, 92-17, 92-18, 92-23 through 92-27). Nedela's signature as "sole President of Offplan Millionaire AG" appears on several documents authorizing transactions and on several deeds, including documents relating to the real property in Florida which is the subject of this lawsuit. (See e.g., Doc. 92-31 and Doc. 92-35; Doc. 91, Depo. Transcript, pp. 30:22 to 31: 20). He drafted and executed a loan agreement from Offplan to a new company operated by alleged co-conspirator Carl Dhir (Depo. Transcript, pp. 76:13-77:13; Doc. 92:18). He opened and administered company bank accounts as the sole signatory (Depo. Transcript, pp. 8:16-10:16). And he signed documents that granted authority to certain co-Defendants to act on behalf of CapInvest and Offplan in their interactions with Plaintiffs (Doc. 92-4; Doc. 92-36). As Director of Prime Asset Investments, a Department of Offplan Millionaire, Nedela even hired a Florida lawyer "in connection with various matters and issues concerning Magnolia Court and deed recording" and "in connection with various issues regarding [co-Defendants the Dorans] and/or their affiliated entities ..." (Docs. 92-28; 92-29). These actions go beyond the routine formation, registration, and administrative services provided by corporate compliance companies or registered agents. It is also noteworthy that no document executed by Nedela contained any qualification that his actions as sole President or

---

[2] Nedela was President of the Board of Directors and President of Offplan and manager of CapInvest (Docs. 92-30 and 92-31), with sole signatory authority.

Director or Manager were performed in a ministerial or otherwise qualified capacity. As Plaintiffs argue, the alleged RICO Enterprise could not have existed, and the alleged co-conspirators could not have acted, without Nedela's efforts.

Nedela maintains that he was lawfully authorized to take all these actions and the evidence does not show otherwise. But that is not the test. See, generally, NHB Advisors, Inc. v. Czyzyk, 95 So. 3d 444, 449 (Fla. 4th DCA 2012) ("although Czyzyk claimed in his affidavit that there was nothing tortious about his meeting with Edward in Florida to discuss the potential sale of Butler, this does not defeat personal jurisdiction. Under the statutory prong, the relevant question is not whether the tort actually occurred, but whether the tort, as alleged, occurred in Florida."). Under the case law on conspiracy jurisdiction, assuming a conspiracy claim is well-pled, jurisdiction under Florida's long arm statute extends to Nedela as long as it can be shown that he or any other co-conspirator committed an act in Florida in furtherance of the conspiracy. Here, there is evidence that Nedela took actions directed at the state of Florida which furthered the alleged RICO Enterprise. In addition, Plaintiffs have adequately alleged that Nedela's co-Defendants committed predicate acts as part of the RICO Enterprise and Nedela does not contend otherwise. Nonetheless, I find jurisdiction over Nedela under Florida's long-arm statute cannot stand because Plaintiffs have failed to rebut his declaration that he did not have knowledge of the fraudulent object of the conspiracy and did not agree to it. Absent knowledge, Plaintiffs cannot successfully allege a conspiracy claim against Nedela.

b.  Alleging Conspiracy

Under both federal and Florida law, a person without any knowledge of the conspiracy or its predicate acts cannot be a co-conspirator. See, e.g., Republic of

Panama v. BCCI Holdings (Luxembourg) S.A., 119 F.3d 935, 950 (11th Cir. 1997) ("A plaintiff can establish a RICO conspiracy claim in one of two ways: (1) by showing that the defendant agreed to the overall objective of the conspiracy; or (2) by showing that the defendant agreed to commit two predicate acts.") (collecting cases); Sky Enterprises, 2017 WL 7309871, at *10 ("There is no requirement that each co-conspirator commit an act in furtherance of the conspiracy; it suffices that each knows about the scheme and helps in some way," quoting MP, LLC v. Sterling Holding, LLC, No. 3D15-1062, 2017 WL 2794218, at *2 (Fla. 3d DCA June 28, 2017)). The Eleventh Circuit has said:

> An agreement to participate in a RICO conspiracy may be shown either by proving "an agreement on the overall objective of the conspiracy" or by showing that the defendant agreed to commit two predicate acts. United States v. Browne, 505 F.3d 1229, 1264 (11th Cir. 2007) (citation omitted). The existence of an agreement, as well as its objective, may be inferred from circumstantial evidence demonstrating "that each defendant must necessarily have known that the others were also conspiring to participate in the same enterprise through a pattern of racketeering activity." Id. (citation omitted). But this does not require proof that "each conspirator agreed with every other conspirator ... [or] was aware of all the details of the conspiracy." Starrett, 55 F.3d at 1544. Indeed, participation in a conspiracy may be inferred merely from acts which furthered its object. United States v. Kopituk, 690 F.2d 1289, 1323 (11th Cir.1982), cert. denied, 463 U.S. 1209, 103 S.Ct. 3542, 77 L.Ed.2d 1391 (1983) (citation omitted).

Liquidation Com'n of Banco Intercontinental, S.A. v. Renta, 530 F.3d 1339, 1353 (11th Cir. 2008).

While Nedela knew far more about the business than the basics, Plaintiffs have failed to allege the necessary facts to support their conclusion that he knew about and agreed to participate in the alleged RICO scheme. See O'Malley v. O'Neill, 887 F.2d 1557, 1559 (11th Cir.1989) (upholding dismissal of RICO conspiracy claim because "no facts [were] alleged that would indicate that [defendants] were willing participants in a

conspiracy"), cert. denied, 496 U.S. 926, 110 S.Ct. 2620 (1991); Sterling Nat'l Mortgage Co., Inc. v. Infinite Title Sols., LLC, 10-22147-CIV, 2011 WL 13220625, at *11 (S.D. Fla. Mar. 3, 2011), report and recommendation adopted sub nom., 2011 WL 1222168 (S.D. Fla. Mar. 31, 2011) ("a plaintiff must allege facts to support each defendant's willingness and intent to participate in a conspiracy."). Plaintiffs contention that "even if Nedela only engaged in lawful business dealings, his actions unquestionably created, enabled, and furthered the scheme, including in Florida," is only sufficient to infer liability if Nedela knew that his lawful actions were in furtherance of the scheme. Viewed holistically, the facts do not support Plaintiffs' conclusory allegation that Nedela "knew" of the scheme so as to justify the exercise of long-arm jurisdiction over him. Jurisdiction cannot rest on so thin a reed.

    c.  Minimum contacts

Even if the Court were to find differently with respect to long-arm jurisdiction, it still must decide whether the exercise of jurisdiction satisfies the requirements of due process. Deciding whether the assertion of personal jurisdiction over a nonresident defendant comports with due process is a two-part inquiry; the court must determine if the defendant has established "minimum contacts" with Florida and then, whether the exercise of personal jurisdiction over the defendant would offend traditional notions of fair play and substantial justice. See Madara v. Hall, 916 F.2d 1510, 1515-16 (11th Cir. 1990), quoting Williams Elec. Co. v. Honeywell, Inc., 854 F.2d 389, 392 (11th Cir.1988). "There are three considerations under the due process clause: (1) purposeful availment of the forum state; (2) the cause of action arises out of the activities of which you purposefully availed yourself, i.e., the contacts must proximately result from actions by the defendant himself that create a 'substantial connection' with the forum state, and (3) reasonable

foreseeability that a defendant should reasonably anticipate being haled into court there."

Future Tech. Today, Inc. v. OSF Healthcare Sys., 218 F.3d 1247, 1250-51 (11th Cir.

2000) (internal citation and quotation omitted).

Nedela argues that his contacts with Florida consist solely of executing documents

in Switzerland and mailing them to Florida. Even if Plaintiffs had shown that Nedela

"purposefully established minimum contacts"–which he disputes–he contends that the

exercise of jurisdiction over him would not comport with "fair play and substantial justice."

Plaintiffs counter that Nedela's participation in the conspiracy is enough to satisfy due

process concerns. There is some support for this contention:

> The acts of the conspiracy in Florida may be imputed to
> Sherway to establish minimum contacts. See J & M Assocs.,
> Inc. v. Romero, 488 F. App'x 373, 375-76 (11th Cir. 2012)
> (holding a nonresident defendant had minimum contacts with
> Alabama because his co-conspirators committed an overt act
> in furtherance of the conspiracy in Alabama); see also
> Platypus Wear, Inc. v. Clarke Modet & Co., Inc., 515 F. Supp.
> 2d 1288, 1294 (S.D. Fla. 2007) ("This Court can then exercise
> jurisdiction over Mr. Caldas if the contacts of the conspiracy
> (imputed to Mr. Caldas Sr.) constitute sufficient minimum
> contacts."); Diversified Mgmt. Sols., Inc. v. Control Sys.
> Research, Inc., No. 15-81062, 2016 WL 4256916, at *15 (S.D.
> Fla. May 16, 2016) (finding minimum contacts satisfied for co-
> conspirator who did not engage in activities in Florida because
> "the bulk of the conspiracy took place in Florida" (citing
> Smolinski & Assocs., Inc. v. Cont'l Airlines, Inc., No. 99-8318,
> 2000 WL 1100106, at *2 (S.D. Fla. July 25, 2000)).
>
> The Court also finds Sherway "purposefully availed itself of
> the privilege of conducting activities in Florida by choosing to
> enter into a conspiracy" with Doronin, a Florida resident.
> Diversified Mgmt Sols., Inc., 2016 WL 4256916, at *15; see
> also Energy Source Inc., 2011 WL 3236047, at *6 (finding
> defendants "purposely directed" their activities at Florida
> where two of their co-conspirators were Florida residents
> (internal quotation marks and citation omitted)); Int'l
> Underwriters AG, 2007 WL 9701852, at *5; AXA Equitable Life
> Ins. Co., 608 F. Supp. 2d at 1355. Exercising jurisdiction over
> Sherway comports with "fair play and substantial justice" for

> the same reasons it does as to Eliasch. Defendants have not
> established that defending this suit in Florida would unduly
> burden Sherway, and because the alleged tortious conduct
> occurred in Florida, this state has "a significant interest in
> resolving this dispute." Energy Source Inc., 2011 WL
> 3236047, at *7. Therefore, exercising jurisdiction over
> Sherway is consistent with due process.

Tavakoli, 18-21592-CIV, 2019 WL 1242669, at *11-12; Machtinger, 937 So. 2d at 736

("Directing a conspiracy toward Florida establishes sufficient minimum contacts to satisfy

due process.").

Still, I agree with Nedela that the facts presented do not establish an adequate

basis for the exercise of jurisdiction over him. It is undisputed that he has little to no

personal contacts with Florida. The amended complaint alleges: "Nedela and Dhir

executed and delivered deeds, contracts, and other documents concerning the Subject

Properties to Crescent and/or Dan Doran in Florida" (Doc. 17, ¶¶ 23, 23(d)). But, those

documents were executed by Nedela in his corporate capacity in Switzerland and I am

not persuaded that Plaintiffs can sidestep Florida's corporate shield doctrine. See Doe v.

Thompson, 620 So.2d 1004 (Fla.1993) (court had no jurisdiction over corporate officer

sued for gross negligence when the officer's only contacts with Florida were his acts on

behalf of the corporation). If I am wrong, then this connection may be enough to satisfy

the first prong of the minimum contacts test. However, the exercise of jurisdiction over

Nedela must also comport with "fair play and substantial justice."

The relevant factors to be considered include "the burden on the defendant in

defending the lawsuit, the forum state's interest in adjudicating the dispute, the plaintiff's

interest in obtaining convenient and effective relief, the interstate judicial system's interest

in obtaining the most efficient resolution of controversies and the shared interest of the

states in furthering fundamental substantive social policies." Madara, 916 F.2d at 1517.

Nedela argues persuasively that it would be a great burden to force him to defend this lawsuit in Florida as he lives in Switzerland and does not conduct business in Florida. Plaintiffs do not dispute this assertion which I have accepted as true. This factor weighs in Nedela's favor.

Nedela also argues that Florida has little to no interest in adjudicating this controversy because Plaintiffs do not reside in this state and most of the parties involved are located outside the United States. Florida has a legitimate interest in claims of real estate fraud involving Florida land. But Plaintiffs and Nedela, the sole non-defaulting Defendant, are not Florida residents and the alleged scheme also included real estate located elsewhere. This factor is therefore neutral.

Plaintiffs have a clear interest in obtaining convenient and effective relief, but both Plaintiffs and Nedela (as well as several of the other Defendants) are foreign nationals and litigating against a German citizen in this forum is not convenient, as the protracted dispute over jurisdictional discovery shows. This factor favors Nedela.

Neither side addresses the judicial system's interest in obtaining the most efficient resolution of controversies and the shared interest of the states in furthering fundamental substantive societal policies. Independently, I see no basis to conclude that these interests will be served by subjecting Nedela to the jurisdiction of this Court.

Our Supreme Court has said: "jurisdictional rules may not be employed in such a way as to make litigation 'so gravely difficult and inconvenient' that a party unfairly is at a 'severe disadvantage' in comparison to his opponent." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 478 (1985). Here, I conclude that the exercise of jurisdiction over Nedela would be so difficult and inconvenient as to be unreasonable and would therefore, offend

due process. Because I find that the Court is without jurisdiction over Nedela, I do not reach the issue of whether the amended complaint should be dismissed on its merits.

A final note is in order. I am not unsympathetic to Plaintiffs' plight. It appears that Nedela may be their best hope of obtaining recompense for the alleged wrongs. Also, my conclusions should not be taken as a finding that Nedela's actions were entirely acceptable. But in order to exercise jurisdiction over Nedela under the conspiracy jurisdiction theory, the allegations against him must meet the well-pled plausibility standard of Twombly and jurisdiction must otherwise comport with the requirements of Florida's long-arm statute and due process. This has not been accomplished and consequently, I find that the Court is without power to do anything other than dismiss.

## Recommendation

Upon consideration of the foregoing, I respectfully recommend that the motion to dismiss Plaintiffs' amended complaint (Doc. 56) be **granted** and the amended complaint be **dismissed** as to Nedela, for lack of personal jurisdiction. Because the dismissal is for jurisdictional reasons, it is without prejudice.[3]

## Notice to Parties

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. See 11th Cir. R. 3-1.

---

[3] "Dismissal for lack of personal jurisdiction is without prejudice and the plaintiff still may sue the defendant in a forum where personal jurisdiction can be obtained." Morris v. SSE, Inc., 843 F.2d 489, 496 (11th Cir. 1988).

**RESPECTFULLY RECOMMENDED** at Orlando, Florida on June 17, 2019.

THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to:

      Presiding United States District Judge
      Counsel of Record
      Any Unrepresented Parties